## BURNETT v. NEW YORK CENTRAL RAILROAD CO.

No. 437.   Argued March 11, 1965.—Decided April 5, 1965.

*Douglas G. Cole* argued the cause for petitioner.   With him on the brief was *Otto F. Putnick.*

*Roy W. Short* argued the cause and filed a brief for respondent.

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

On March 13, 1963, petitioner, a resident of Kentucky, began an action under the Federal Employers' Liability Act, 35 Stat. 65, as amended, 45 U. S. C. § 51 *et seq.* (1958 ed.), in the Common Pleas Court of Hamilton County, Ohio.   He alleged that he had been injured on March 17, 1960, in Indiana, while in. the course of his employment with respondent, the New York Central Railroad.   The

Ohio court had jurisdiction of the action, and respondent was properly served with process. The action was dismissed upon respondent's motion, however, because venue was improper. While in Ohio in most transitory actions venue is proper wherever the defendant can be summoned, see Ohio Rev. Code §§ 2307.36, 2307.38, 2307.39, venue is properly laid in actions against railroads to recover for personal injuries only in the county of the plaintiff's residence or the county where the injury occurred.[1] See Ohio Rev. Code § 2307.37, *Loftus* v. *Pennsylvania R. Co.*, 107 Ohio St. 352, 140 N. E. 94. On June 12, 1963, eight days after his state court action was dismissed, petitioner brought an identical action in the Federal District Court for the Southern District of Ohio. The District Court dismissed petitioner's complaint on the ground that although the state suit was brought within the limitations period, the federal action was not timely and was then barred by the limitation provision of the FELA, 35 Stat. 66, as amended, 45 U. S. C. § 56 (1958 ed.), which provides: "That no action shall be maintained under this Act unless commenced within three years from the day the cause of action accrued." 230 F. Supp. 767. The Court of Appeals, rejecting petitioner's argument that his suit in the state court had tolled the FELA limitation provision, affirmed the District Court's dismissal of his suit. 332 F. 2d 529. The Court of Appeals reasoned that since the limitation provision does not limit a common-law right, but, rather, is contained in the same Act which creates the right being limited, the limitation is "substantive" and not "procedural." For this reason, it held, "[f]ailure to bring the action within the time pre-

---

[1] Counsel for petitioner stated at oral argument that the constitutionality of this special venue provision for actions against railroads was being challenged in other litigation. No constitutional issue was raised in these proceedings, and we express no views upon any such question.

scribed extinguished the cause of action." 332 F. 2d, at 530. We granted certiorari to determine whether petitioner's suit in the Ohio state court tolled the FELA statute of limitations. 379 U. S. 913.

There is no doubt that, as a matter of federal law, the state action here involved was properly "commenced" within the meaning of the federal limitation statute which provides that "no action shall be maintained . . . unless commenced within three years from the day the cause of action accrued." As this Court held in *Herb* v. *Pitcairn,* 325 U. S. 77, 79, "when process has been adequate to bring in the parties and to start the case on a course of judicial handling which may lead to final judgment without issuance of new initial process, it is enough to commence the action within the federal statute." Had Ohio law permitted this state court action simply to be *transferred* to another state court, *Herb* v. *Pitcairn* holds that it would have been timely. The problem here, however, is that the timely state court action was not transferable under Ohio law but, rather, was dismissed, and a new action was brought in a federal court more than three years after the cause of action accrued. Nonetheless, for the reasons set out below, we hold that the principles underlying the Court's decision in *Herb* v. *Pitcairn* lead to the conclusion that petitioner's state court action tolled the federal limitation provision and therefore petitioner's federal court action here was timely.

The basic question to be answered in determining whether, under a given set of facts, a statute of limitations is to be tolled, is one "of legislative intent whether the right shall be enforceable . . . after the prescribed time." *Midstate Horticultural Co.* v. *Pennsylvania R. Co.,* 320 U. S. 356, 360. Classification of such a provision as "substantive" rather than "procedural" does not determine whether or under what circumstances the limitation

period may be extended.[2]   As this Court has expressly held, the FELA limitation period is not totally inflexible, but, under appropriate circumstances, it may be extended beyond three years.   *Glus* v. *Brooklyn Eastern Terminal,* 359 U. S. 231.   See *Osbourne* v. *United States,* 164 F. 2d 767 (C. A. 2d Cir.); *Scarborough* v. *Atlantic Coast Line R. Co.,* 178 F. 2d 253 (C. A. 4th Cir.); *Frabutt* v. *New York, C. & St. L. R. Co.,* 84 F. Supp. 460 (D. C. W. D. Pa.). These authorities indicate that the basic inquiry is whether congressional purpose is effectuated by tolling the statute of limitations in given circumstances.

In order to determine congressional intent, we must examine the purposes and policies underlying the limitation provision, the Act itself, and the remedial scheme developed for the enforcement of the rights given by the Act.   Such an examination leads us to conclude that it effectuates the basic congressional purposes in enacting this humane and remedial Act,[3] as well as those policies

---

[2] The distinction between substantive and procedural statutes of limitations appears to have arisen in cases involving conflicts of laws, see *The Harrisburg,* 119 U. S. 199; *Davis* v. *Mills,* 194 U. S. 451; Restatement of the Law, Conflict of Laws § 605.   While the embodiment of a limitation provision in the statute creating the right which it modifies might conceivably indicate a legislative intent that the right and limitation be applied together when the right is sued upon in a foreign forum, the fact that the right and limitation are written into the same statute does not indicate a legislative intent as to whether or when the statute of limitations should be tolled.   Thus the "substantive"-"procedural" distinction would seem to be of little help in deciding questions of extending the limitation period. See *Glus* v. *Brooklyn Eastern Terminal,* 359 U. S. 231; Developments in the Law—Statutes of Limitations, 63 Harv. L. Rev. 1177, 1186–1188 (1950); Note, 72 Yale L. J. 600, 604–605 (1963).

[3] See, *e. g., Rogers* v. *Missouri Pac. R. Co.,* 352 U. S. 500, 507.   See also Griffith, The Vindication of a National Public Policy under the Federal Employers' Liability Act, 18 Law & Contemp. Prob. 160 (1953).

embodied in the Act's limitation provision, to hold that when a plaintiff begins a timely FELA action in a state court of competent jurisdiction, service of process is made upon the opposing party, and the state, court action is later dismissed because of improper venue, the FELA limitation is tolled during the pendency of the state action.

Statutes of limitations are primarily designed to assure fairness to defendants. Such statutes "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared. The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Order of Railroad Telegraphers* v. *Railway Express Agency, Inc.,* 321 U. S. 342, 348–349. Moreover, the courts ought to be relieved of the burden of trying stale claims when a plaintiff has slept on his rights.[4]

This policy of repose, designed to protect defendants, is frequently outweighed, however, where the interests of justice require, vindication of the plaintiff's rights. Thus, this Court has held that an FELA action is not barred, though brought more than three years after the cause of action accrued, where a defendant misled the plaintiff into believing that he had more than three years in which to bring the action. *Glus* v. *Brooklyn Eastern Terminal, supra.* Moreover, it has been held that the

---

[4] See The Act of Limitation with a Proviso, 32 Hen. 8, c. 2 (1540): "Forasmuch as the Time of Limitation appointed for suing . . . extend, and be of so far and long Time past, that it is above the Remembrance of any living Man, truly to try and know the perfect Certainty of such Things, as hath or shall come in Trial . . . to the great Danger of Mens Consciences that have or shall be impanelled in any Jury for the Trial of the same . . . ."

FELA limitation provision is tolled when war has prevented a plaintiff from bringing his suit, even though a defendant in such a case might not know of the plaintiff's disability and might believe that the statute of limitations renders him immune from suit. See *Osbourne* v. *United States, supra; Frabutt* v. *New York, C. & St. L. R. Co., supra.* In such cases a plaintiff has not slept on his rights but, rather, has been prevented from asserting them.

Considerations in favor of tolling the federal statute of limitations in this case are similar to those leading to an extension of the limitation period in the cases mentioned above. Petitioner here did not sleep on his rights but brought an action within the statutory period in a state court of competent jurisdiction. Service of process was made upon the respondent notifying him that petitioner was asserting his cause of action. While venue was improper in the state court, under Ohio law venue objections may be waived by the defendant,[5] and evidently in past cases defendant railroads, including this respondent, had waived objections to venue so that suits by nonresidents of Ohio could proceed in state courts.[6] Petitioner, then, failed to file an FELA action in the federal courts, not because he was disinterested, but solely because he felt that his state action was sufficient. Respondent

---

[5] *Skelly* v. *Jefferson State Bank,* 9 Ohio St. 606; *Ohio Southern R. Co.* v. *Morey,* 47 Ohio St. 207, 24 N. E. 269.

[6] Because of the provisions of Ohio Rev. Code § 2307.37, venue in a suit for injuries to person or property against a railroad is proper only in the county where the cause of action arose or where the plaintiff resides. Thus venue in an action by a resident of a foreign state against a railroad arising out of an accident outside the State is not proper anywhere within Ohio. Railroads can agree to venue in an Ohio state court in such a case, however, and evidently they have so agreed, as we were told on oral argument, for cases can be found which involve accidents occurring, and plaintiffs who reside, outside the county where suit was brought. See, *e. g., Woodworth* v. *New York Central R. Co.,* 149 Ohio St. 543, 80 N. E. 2d 142.

could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that petitioner was actively pursuing his FELA remedy; in fact, respondent appeared specially in the Ohio court to file a motion for dismissal on grounds of improper venue.

Both federal and state jurisdictions have recognized the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run. In both federal and state systems of justice rules have been devised to prevent this from happening. Thus a federal statute, 28 U. S. C. § 1406 (a), allows a district court "of a district in which is filed a case laying venue in the wrong division or district . . . if it be in the interest of justice," to "transfer such case to any district or division in which it could have been brought." [7] Congress thereby recognized that the filing of a lawsuit "itself shows the proper diligence on the part of the plaintiff which . . . statutes of limitation were intended to insure. If by reason of the uncertainties of proper venue a mistake is made . . . 'the interest of justice' may require that the complaint . . . be transferred in order that the plaintiff not be penalized by . . . 'time-consuming and justice-defeating technicalities.'" *Goldlawr, Inc.* v. *Heiman,* 369 U. S. 463, 467. If petitioner in this case had instituted his suit in a federal court where venue was improper, his case could simply have been transferred under § 1406 (a) to a court with proper venue; the statute of limitations would not have barred his action.

---

[7] Numerous cases hold that when dismissal of an action for improper venue would terminate rights without a hearing on the merits because plaintiff's action would be barred by a statute of limitations, "the interest of justice" requires that the cause be transferred. See, *e. g., Gold* v. *Griffith,* 190 F. Supp. 482 (D. C. N. D. Ind.); *Dennis* v. *Galvanek,* 171 F. Supp. 115 (D. C. M. D. Pa.); *Schultz* v. *McAfee,* 160 F. Supp. 210 (D. C. D. Me.).

The States have developed two methods for preserving causes of action which would otherwise be barred by the passing of a limitation period after a plaintiff has brought his action in a court with improper venue. The first method is analogous to the congressional statute, 28 U. S. C. § 1406 (a), and permits transfer within the State from a court with improper venue to one where venue is proper.[8] This Court has held that when a timely FELA action is brought in a state court without proper venue and service of process issues, the statute of limitations cannot bar the action when it is later transferred to a proper state court after the limitation period has run. *Herb* v. *Pitcairn, supra.* Thus, if venue for petitioner's action were proper in some other county in Ohio, and if Ohio chose to preserve improper venue actions by means of a "transfer" statute, petitioner's action would not have been barred by the statute of limitations. The second method used by many States to preserve actions brought in a court where venue is improper is a "saving" statute.[9]

---

[8] Thirty-one States have transfer-of-venue statutes which appear to be relevant: Alaska Stat. § 22.10.040; Ariz. Rev. Stat. 1956, § 12–404; Deering's Cal. Code Civ. Proc. Ann. 1959, § 396; Colo. Rules Civ. Proc., Rule 98 (f); Conn. Gen. Stat. 1958, § 52–32; Fla. Stat. 1963, § 53.17; Idaho Code 1947, § 5–406; Smith-Hurd's Ill. Ann. Stat. 1956, c. 110, § 10; Burns' Ind. Ann. Stat. 1933, § 2–1401; Kan. Code Civ. Proc. Ann. 1963, § 60–611; Mass. Gen. Laws Ann. 1959, c. 223, § 15; Mich. Stat. Ann. 1962, § 27A.1651; Minn. Stat. Ann. 1947, § 542.10; Miss. Code 1942, § 1441; Mont. Rev. Codes 1947, § 93–2906; Nev. Rev. Stat. § 13.050; N. H. Rev. Stat. Ann. 1955, § 507:11; N. J. Court Rules Rev. 1:27D; McKinney's N. Y. Civ. Prac. Law & Rules 1963, § 510; N. C. Gen. Stat. § 1–25; N. D. Century Code 1960, § 28–04–07; Ore. Rev. Stat. § 14.110; S. C. Code 1962, § 10–310; S. D. Code § 33.0306; Vernon's Tex. Rules Civ. Proc., Rule 257; Utah Code Ann. 1953, § 78–13–8; Va. Code 1950, § 8–157; Wash. Rev. Code § 4.12.030; W. Va. Code 1961, § 5699; Wis. Stat. 1963, § 261.03; Wyo. Stat. 1957, Civ. Proc. Code § 1–53.

[9] Thirty-one States have "saving" statutes which appear to be relevant: Alaska Stat. § 09.10.240 (one year); Ark. Stat. 1947,

Such a statute specifically gives to a plaintiff whose timely action is dismissed for procedural reasons such as improper venue a specified time in which to bring a second action. Ohio has such a statute, Ohio Rev. Code § 2305.19, and, had petitioner's action been one arising under Ohio law, he would have had an additional year in which to file his action in a proper court. State causes of action brought in a court where venue is improper are preserved by one or the other of these two methods in 44 States.[10]

These factors point to the conclusion that Congress did not intend the statute of limitations to bar a plaintiff who brings a timely FELA action in a state court of competent jurisdiction, who serves the defendant with process, and whose action is later dismissed for improper venue. This does not mean that we can accept petitioner's argument that the federal limitation provision

§ 37–222 (one year); Conn. Gen. Stat. 1958, § 52–592 (one year); Del. Code Ann. 1953, Tit. 10, § 8117 (one year); Ga. Code Ann. § 3–808 (six months); Smith-Hurd's Ill. Ann. Stat. 1956, c. 83, § 24a (one year); Burns' Ind. Ann. Stat. 1933, § 2–608 (five years); Iowa Code Ann. 1950, § 614.10 (six months); Kan. Code Civ. Proc. Ann. 1963, § 60–518 (six months); Ky. Rev. Stat. § 413.270 (90 days); Slovenko's La. Civ. Code 1961, Art. 3555, R. S. 9:5801 (complete tolling); Me. Rev. Stat. 1954, c. 112, § 99 (six months); Mass. Gen. Laws Ann. 1959, c. 260, § 32 (one year); Mich. Stat. Ann. 1962, § 27A.5856 (90 days); Miss. Code 1942, § 744 (one year); Mont. Rev. Codes 1947, § 93–2708 (one year); N. H. Rev. Stat. Ann. 1955, § 508:10 (one year); N. M. Stat. 1953, § 23–1–14 (six months); McKinney's N. Y. Civ. Prac. Law & Rules 1963, § 205 (six months); N. C. Gen. Stat. § 1–25 (one year); Ohio Rev. Code 1954, § 2305.19 (one year); Okla. Stat. Ann., Tit. 12, § 100 (one year); Ore. Rev. Stat. § 12.220 (one year); R. I. Gen. Laws § 9–1–22 (one year); Tenn. Code Ann. 1955, § 28–106 (one year); Vernon's Tex. Civ. Stat. Ann., Tit. 91, Art. 5539a (60 days); Utah Code Ann. 1953, § 78–12–40 (one year); Vt. Stat. Ann. 1958, Tit. 12, § 558 (one year); Va. Code 1950, § 8–34 (one year); W. Va. Code 1961, § 5410 (one year); Wyo. Stat. 1957, § 1–26 (one year).

[10] See notes 8, 9, *supra,* note 12, *infra.*

incorporates the Ohio Saving Statute. To allow the limitation provision to incorporate state saving statutes would produce nonuniform periods of limitation in the several States. The scope of such statutes and the length of additional time they allow vary considerably from State to State.[11] Moreover, not all States have saving statutes.[12] This Court has long recognized that the FELA "has a uniform operation, and neither is nor can be deflected therefrom by local statutes." *Panama R. Co.* v. *Johnson,* 264 U. S. 375, 392; *Second Employers' Liability Cases,* 223 U. S. 1, 51, 55. This Court has also specifically held that "[t]he period of time within which an action may be commenced is a material element in . . . [a] uniformity of operation" which Congress would not wish "to be destroyed by the varying provisions of the state statutes of limitation." *Engel* v. *Davenport,* 271 U. S. 33, 39. The incorporation of variant state saving statutes would defeat the aim of a federal limitation provision designed to produce national uniformity.

On the other hand, to accept respondent's argument that the limitation provision is not tolled under the circumstances present here would do even greater violence to the policies underlying the limitation provision and the Act. It would produce a substantial nonuniformity by creating a procedural anomaly. A plaintiff who brings a timely FELA action in a federal court where venue is improper would not be barred by the subsequent running of the limitation period, 28 U. S. C. § 1406 (a), nor would a plaintiff who brings a timely FELA action in a state

---

[11] An additional year is allowed in 20 States, six months in six States, 90 days in two States, 60 days in one State, five years in one State, and one State imposes no definite limitation upon the additional time allowed. See note 9, *supra.*

[12] Nineteen States appear to have no applicable saving statute. Alabama, Hawaii, Maryland, Missouri, Nebraska, and Pennsylvania appear to have neither a saving nor a transfer statute.

court where venue is improper be barred by the subsequent running of the limitation period provided that the State has a "transfer" statute and venue is proper elsewhere in the State. *Herb* v. *Pitcairn, supra.* However, a similar plaintiff in a state court would be barred from further actions by the running of the limitation period if the State relies upon a "saving" statute, rather than a "transfer" statute to preserve similar state actions.[13] Thus, in effect, a nonuniform limitation provision would be produced. Yet, as we have pointed out, a major reason for having a federal limitation provision was to achieve national uniformity. *Engel* v. *Davenport, supra.* Moreover, to accept respondent's position could only discourage FELA actions in the courts of certain States. Yet Congress, in providing for concurrent state and federal court jurisdiction and prohibiting removal of FELA cases to federal courts, has sought to protect the plaintiff's right to bring an FELA action in a state court. See *Great Northern R. Co.* v. *Alexander,* 246 U. S. 276. Cf. Gibson, The Venue Clause and Transportation of Lawsuits, 18 Law & Contemp. Prob. 367 (1953). Further, as we have pointed out, both Congress and the States have made clear, through various procedural statutes, their desire to prevent timely actions brought in courts with improper venue from being time-barred merely because the limitation period expired while the action was in the improper court. Finally, the humanitarian purpose of the FELA makes clear that Congress would not wish a plaintiff deprived of his rights when no policy underlying a statute of limitations is served in doing so.

These considerations thus lead us to conclude that when a plaintiff begins a timely FELA action in a state court having jurisdiction, and serves the defendant with process

---

[13] This would be true in the 19 States which lack transfer statutes. Of those 19, 13 have saving statutes and six do not. See notes 8, 9, and 11, *supra.*

and plaintiff's case is dismissed for improper venue, the FELA limitation is tolled during the pendency of the state suit. We believe that the interests of uniformity embodied in the Act are best served by holding that this rule, tolling the statute, applies in all States regardless of whether or not a State has a "saving" statute. We further hold, under familiar principles which have been applied to statutes of limitations, that the limitation provision is tolled until the state court order dismissing the state action becomes final by the running of the time during which an appeal may be taken or the entry of a final judgment on appeal.[14] While this rule produces a minor nonuniformity since the time allowed for taking an appeal is not the same in all States, to adopt state "saving" statutes would be far less uniform. The period "saved" under such statutes varies widely among the States, and some States do not have "saving" statutes. Similarly, to toll the federal statute for a "reasonable time" after the state court orders the plaintiff's action dismissed would create uncertainty as to exactly when the limitation period again begins to run. This uncertainty would be compounded by applying the equitable doctrine of "laches" to the federal lawsuit brought after the dismissal of the state court action. Whether laches bars an action in a given case depends upon the circumstances of that case and "is a question primarily addressed to the discretion of the trial court." *Gardner* v. *Panama R. Co.*, 342 U. S. 29, 30. To apply it here would be at variance with the policies of certainty and uniformity underlying this statute of limitations. We conclude that a uniform rule tolling the federal statute for the period of the pendency of the state

---

[14] Cf. Clayton Act, as amended, § 5 (b), 69 Stat. 283, 15 U. S. C. § 16 (b) (1958 ed.); *Electric Theater Co.* v. *Twentieth Century-Fox Film Corp.*, 113 F. Supp. 937, 944 (D. C. W. D. Mo.); Subversive Activities Control Act of 1950, § 14, 64 Stat. 1001, 50 U. S. C. § 793 (b) (1958 ed.).

court action and until the state court dismissal order becomes final is fair to both plaintiff and defendant, carries out the purposes of the FELA, and best serves the policies of uniformity and certainty underlying the federal limitation provision.

Applying these principles to the present case, since petitioner brought a timely suit in the Ohio court, served defendant with process, and, after finding the state action dismissed for improper venue, filed his suit in the Federal District Court only eight days after the Ohio court dismissed his action, before his time for appealing from the Ohio order had expired, his federal court action was timely. The Court of Appeals decision affirming the District Court's dismissal of petitioner's action is therefore reversed, and this case is remanded for proceedings consistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE DOUGLAS, whom MR. JUSTICE BLACK joins, concurring.

The federal question presented is whether this action, timely started in the state court but not timely started if the filing date in the federal court governs, was "commenced within three years from the day the cause of action accrued" within the meaning of 45 U. S. C. § 56. I think it was so "commenced," as much as was the action in *Herb* v. *Pitcairn,* 325 U. S. 77.

In reaching this conclusion I do not find it necessary to rely on the fact that petitioner filed in the federal court "before his time for appealing from the Ohio order had expired," *ante,* this page. Instead I rest simply on the ground that "when process has been adequate to bring in the parties and to start the case on a course of judicial handling which *may* lead to final judgment without issuance of new initial process, it is enough to *commence* the action within the federal statute." 325 U. S., at 79.

(Emphasis supplied.) And see *Herb* v. *Pitcairn,* 324 U. S. 117, 132–133 (dissenting opinion of BLACK, J.), setting forth the requirements for commencing an FELA action within the meaning of 45 U. S. C. § 56: (1) a bona fide effort to prosecute the claim, (2) in a court having jurisdiction, (3) resulting in notice to the defendant.

If after dismissal the plaintiff delays inexcusably in refiling his suit in the proper court and the defendant is prejudiced by the delay, the action will of course be barred by laches. *Gardner* v. *Panama R. Co.,* 342 U. S. 29, 30–31. That familiar equitable doctrine provides the defendant with adequate protection against delay. The Court rejects this established doctrine, however, creating a new statute of limitations of its own which makes the timeliness of a federal cause of action depend on state time requirements which were adopted for other, unrelated purposes and which vary from State to State. The long-established federal rule of laches, in contrast, is uncomplicated, uniform, and directly responsive to the problem. Laches, of course, has no application in the instant case, as petitioner filed in the federal court only eight days after his state court action had been dismissed.